IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | NO. 08-390 |
| DAVID FERRELL | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                           December 29, 2009

      On July 2, 2008, David Ferrell was charged with one count of possession with intent to distribute five grams or more of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and one count of possession with intent to distribute five grams or more of crack within 1,000 feet of school property, in violation of 21 U.S.C.§§ 860, 841(b)(1)(B). On September 23, 2009, Ferrell filed a motion to suppress evidence, arguing the search and seizure of his vehicle and person were unconstitutional. After the hearing on Ferrell's motion, this Court ordered supplemental briefing on the constitutionality of the search of Ferrell's vehicle. Both parties have since filed supplemental briefs.

      Ferrell seeks to suppress drugs recovered from his vehicle and his person based on two theories. First, Ferrell argues the stop of his vehicle was unconstitutional because there was no probable cause to believe a traffic violation had occurred. Second, Ferrell argues the scope of the vehicle's search exceeded constitutional boundaries. In response, the Government contends the stop was legitimate based on the officers' observation of Ferrell's failure to signal a turn. The Government further argues the post-stop search was not overly broad. Because the Court agrees with Ferrell on both points, Ferrell's motion to suppress is granted.

1

**FINDINGS OF FACT**

1. On March 2, 2008, at about 11:00 p.m., Philadelphia Police Officers Michael Alice and Timothy Dunne were traveling in an unmarked vehicle westbound on Poplar Street in Philadelphia, Pennsylvania. Both officers were in full uniform. Officer Dunne was driving.

2. Officers Alice and Dunne were members of a tactical unit assigned to patrol high-crime areas.[1] The area in which the officers were traveling on the night of March 2, 2008 is designated a high-crime area by the Philadelphia Police Department.

3. Tactical unit members focus on serious crimes, and unit members' duties include searching for persons with outstanding warrants for their arrest, investigating shootings, and attempting to apprehend drug dealers.

4. While traveling on Poplar Street, about mid-block between 41st and 42nd Streets, Officers Alice and Dunne observed a 2001 black Chevrolet Monte Carlo traveling three to five car lengths ahead of their vehicle.[2]

5. The officers observed the Monte Carlo stop at a stop sign and turn south onto 42nd Street.

---

[1] Officer Alice had been a police officer for about five-and-a-half years as of March 2, 2008, and he had been assigned to the tactical unit for about two-and-a-half years. Officer Dunne had been a police officer for about four years as of March 2, 2008, and he had been assigned to the tactical unit for about four months.

[2] Officer Alice could not recall if there were any cars between his vehicle and the Monte Carlo when it was first observed. The following exchange took place between Defense counsel and Officer Alice: "Q: Were there any cars between you and that car [the Monte Carlo] when you proceeded toward 42nd Street? A: I'm not a hundred percent sure. . . . Q: Were there any cars blocking your view of the observations you made of this alleged failure to make a turn signal? A: If we seen it, no. If we seen the turn signal, then I would say that there was none in front of us. Q: But you don't recall as you're sitting here today? A: Not a hundred percent, no sir." Mot. to Suppress Hr'g, 10:01:58, Oct. 1, 2009. Officer Dunne testified the Monte Carlo was a quarter of a block, or approximately 40-50 feet, ahead of his vehicle, and there were no cars between the two.

6. The officers testified they observed the driver of the Monte Carlo fail to signal his turn from Poplar Street onto 42nd Street, and after Ferrell's arrest, the officers issued him a ticket for failure to signal. The officers also testified they began following Ferrell's vehicle after observing this purported traffic violation. The Court finds the officers' testimony as to their observation of a traffic violation is not credible.

7. The officers' vehicle was moving forward when they observed the Monte Carlo make the stop at Poplar Street and 42nd Street. Both officers also testified the Monte Carlo was traveling at a relatively fast speed, though neither officer was able to definitively say the driver was speeding.

8. The officers followed the Monte Carlo as it turned south onto 42nd Street. The officers observed the Monte Carlo stop at a stop sign at the corner of 42nd Street and Mantua Avenue, again stop at a stop sign at the corner of 42nd Street and Westminster Avenue, and then turn east onto Westminster Avenue. The officers observed the vehicle stop at a stop sign at 41st Street and Westminster Avenue.

9. Officer Dunne initiated the unmarked vehicle's lights and sirens just after the Monte Carlo pulled away from a stop sign at 41st Street and Westminster Avenue.[3] The driver of the

---

[4] The officers' testimony was inconsistent as to when and how the officers signaled for the Monte Carlo to stop. On direct examination, Officer Alice could not remember when officers initiated lights and sirens, but, on cross-examination, he stated the officers activated the lights at 42nd Street, and the vehicle's lights remained activated throughout pursuit of the Monte Carlo on 42nd Street and Westminster Avenue. On direct examination, Officer Dunne testified he initiated the lights and sirens just after the Monte Carlo pulled away from a stop sign at 41st Street and Westminster Avenue. On cross-examination, Officer Dunne confirmed he initiated lights and sirens at 41st Street and Westminster Avenue. Because Officer Dunne was the vehicle's driver and because his testimony comports with both officers' account that Ferrell stopped immediately after their signal, the Court finds the traffic stop was initiated as Ferrell was pulling away from the stop sign at 41st Street and Westminster Avenue.

Monte Carlo promptly pulled over.

10. The vehicle stopped in the 4000 block of Westminster Avenue, near the corner of Westminster Avenue and Wiota Street. The distance between the location at which the officers first spotted the Monte Carlo and the vehicle's stop was approximately half a mile.

11. The area was well lit. There were several street lights nearby and the headlights of the officers' vehicle were lit. Both officers also carried flashlights.

12. Shortly after the officers left their vehicle, they observed the driver's right shoulder rise and then dip, a motion the officers believed suggested the driver, Ferrell, was removing something from his pants and placing something underneath the driver's seat. The officers feared the item Ferrell was concealing beneath his seat was a weapon. The officers had no other reason to suspect Ferrell was armed or otherwise dangerous.[4]

13. Officer Alice approached the passenger side of the vehicle, and Officer Dunne approached the driver's side. They instructed Ferrell to shut the vehicle off, roll the windows down, and remove the keys from the ignition. Ferrell complied.

14. Officer Dunne ordered Ferrell to place his hands on the steering wheel, and Ferrell complied. Officer Dunne then asked Ferrell for his driver's license and the vehicle's paperwork. Ferrell gave his license and car keys to Officer Dunne.[5] Officer Dunne placed these items on the roof of the Monte Carlo.

---

[5] Officer Alice testified the only reason he suspected Ferrell might be armed was his observation of Ferrell's motion, which looked like Ferrell was concealing something underneath his seat. Officer Dunne testified he had received no reports of crime or any other information which might suggest the Monte Carlo's driver was armed or dangerous.

[6] Neither officer could recall from where Ferrell produced his driver's license. Also, in his testimony, Officer Dunne omitted mention of the transfer of the car keys.

4

15. Officer Dunne asked Ferrell to step out of the vehicle, and Ferrell immediately complied. Officer Dunne patted down Ferrell for weapons and found none. Officer Dunne escorted Ferrell to the rear of the vehicle.

16. Officer Alice then approached the driver's side of the vehicle to search the area where Ferrell reached to ascertain whether there was a weapon under his seat.

17. Using his flashlight, Officer Alice looked under the driver's seat. Officer Alice saw no weapons, nor did he see any items which resembled weapons.[6]

18. Officer Alice observed a large, clear plastic sandwich bag. Officer Alice removed the bag from beneath the seat.

19. After removing the bag, Officer Alice looked through the clear bag and observed the bag contained narcotics. Officer Alice recognized the contents as narcotics from his experience in making numerous prior arrests for narcotics possession.

20. The bag discovered by Officer Alice contained another clear plastic sandwich bag, which contained ten plastic sandwich bags. Each of these ten bags contained twenty smaller plastic bags of crack cocaine.

21. After Officer Alice emerged with the narcotics, Officer Dunne placed Ferrell under arrest and handcuffed Ferrell.

22. Officer Dunne then searched Ferrell's clothing. In Ferrell's pants pockets, Officer Dunne found $567 and a sandwich bag containing twenty plastic bags of crack cocaine.

---

[7] On cross-examination, Officer Dunne agreed the bag of drugs found beneath the car seat was "clearly not a weapon." Mot. to Suppress Hr'g,11:53:50, Oct. 1, 2009.

**DISCUSSION**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A "[t]emporary detention of individuals during the stop of an automobile by the police" is a seizure within the meaning of the Fourth Amendment and is therefore "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Warrantless searches "are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 129 S. Ct. 1710, 1716 (2009) (citations and internal quotation marks omitted).

Where searches and seizures are conducted without a warrant, the Government bears the burden of showing, by a preponderance of the evidence, such searches and seizures were reasonable. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995); *see also United States v. Green*, No. 05-207, 2006 WL 62820, at *1 (W.D. Pa. Jan. 11, 2006). Where there is probable cause to believe a traffic violation has occurred, the stop of an automobile is reasonable. *Whren*, 517 U.S. at 810. In the context of evaluating the constitutionality of vehicle seizures and searches, an officer's subjective intent "does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* at 813 (citation and internal quotation marks omitted). The Government asserts the stop of Ferrell's vehicle was reasonable, and thus, constitutional, because there was probable cause to believe Ferrell had committed a traffic violation, namely, failure to properly signal a turn. At the suppression hearing, Officers Alice and Dunne testified they observed Ferrell turn left from Poplar Street onto 42nd Street without using his turn signal. The first issue before the Court, therefore, is whether the officers' testimony is credible as to whether a traffic violation occurred.

As the factfinder with respect to the instant motion, the Court may accept or reject any part or all of a witness's testimony. *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005). In assessing credibility, the Court considers several factors, including:

> the witness's demeanor and manner while on the stand, the witness's ability to accurately recollect the matters at hand, the manner in which the witness may be affected by the outcome, the extent to which the witness's testimony is either supported or contradicted by other evidence and testimony in the case, and, ultimately, the extent to which it withstands a common sense test of reason and logic.

*Id.* In the unique circumstances of this case, the Court is compelled to conclude the officers' account of observation of a traffic violation fails to withstand such a common sense test.

When the officers first observed Ferrell's vehicle, it was no more than roughly sixty feet ahead of them. Before the officers directed Ferrell to pull over, they observed him stop at four stop signs. Even if Ferrell were driving relatively fast, the Government has failed to offer a sound explanation for why the officers stopped Ferrell roughly one-half mile from the location at which they purportedly observed a traffic violation, particularly after Ferrell made repeated stops.

The officers' differing versions of initiation of the traffic stop further detracts from their credibility. *See Murphy*, 402 F. Supp. 2d at 570 (noting conflicting testimony among law enforcement officers regarding the execution of a traffic stop undercuts the officers' testimony); *United States v. Gant*, 412 F. Supp. 2d 451, 452-53 (E.D. Pa. 2005) (concluding officers' testimony that the defendant was stopped for failing to use his turn signal was not credible in light of their conflicting accounts of the stop and the vehicle's subsequent search). Officer Alice testified the officers initiated lights and sirens immediately after observing the traffic violation. Both officers, however, testified Ferrell pulled over as soon as they initiated the stop. Ferrell's stop could not reasonably be considered compliant if the officers followed him for several blocks with lights

7

blazing and sirens blaring. On the other hand, Officer Dunne testified the officers initiated lights and sirens immediately after Ferrell pulled away from the stop sign at 41st Street and Westminster Avenue. This version of events comports with the officers' account that Ferrell stopped immediately, but the question remains why the officers continued to follow Ferrell, without initiating a stop, for several blocks after witnessing the alleged traffic violation.

An alternative scenario, offered by Ferrell, in which the officers stopped his vehicle because he was a lone black male driving in a high crime area late at night, not because he failed to signal a turn, is particularly plausible where one of the two officers in the vehicle did not seem to remember actually observing the traffic violation. Officer Alice was unable to recall whether there were other cars between his vehicle and the Monte Carlo before the alleged traffic violation, but upon cross-examination, decided there must not have been any such cars, "if we seen the turn signal." Mot. to Suppress Hr'g, 10:02:24, Oct. 1, 2009. *See Murphy*, 402 F. Supp. 2d at 570 (concluding a law enforcement officer's difficulty in recalling details regarding the circumstances of a traffic stop undermined his credibility). Furthermore, the officers who executed the stop were part of a tactical unit tasked with ferreting out serious crime in high-crime neighborhoods, not with policing traffic violations. Given the inexplicable distance between the purported traffic violation and the vehicle's stop, the inconsistencies and uncertainties in the officers' testimony, and the officers' duty to investigate serious crimes, this Court finds there was no probable cause to believe a traffic violation had occurred, and the seizure of Ferrell's vehicle was therefore unreasonable and in violation of the Fourth Amendment. Therefore, all evidence secured as a result of the unconstitutional seizure must be suppressed pursuant to the exclusionary rule. *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002).

Even if there were sufficient probable cause to stop Ferrell's vehicle, however, the evidence seized must still be suppressed because Officer Alice's search exceeded the scope permitted by the Fourth Amendment. For Officer Alice's search and seizure to have been constitutional, the Government must show two conditions were satisfied. *See Michigan v. Long*, 463 U.S. 1032, 1049 (1983) ("[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.") (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968). First, "the police must reasonably believe, based on specific and articulable facts, that the suspect is dangerous and may gain immediate control of weapons in the car." *Id.* Second, "the police must look only in those parts of the passenger compartment where weapons might be placed or hidden." *United States v. Clarke*, No. 99-280-2, 1999 WL 773665, at *6 (E.D. Pa. Sept. 29, 1999).

The Government has shown the officers were justified in believing Ferrell was dangerous or might have access to weapons within his vehicle. The officers reasonably suspected there was a weapon under Ferrell's seat based on the officers' observation of Ferrell's movements, which suggested Ferrell was attempting to conceal something beneath his seat after the officers signaled for him to pull over. *See United States v. Johnson*, 212 F.3d 1313, 1316-17 (D.C. Cir. 2000) (noting an officer could reasonably conclude a suspect was attempting to hide a weapon underneath a car seat after observing the suspect make "shoving down" motions after becoming aware of police presence). Though the officers had no other reason to believe Ferrell was armed or dangerous, the Court concludes the officers' observations of Ferrell's movements were sufficient to justify a

9

protective search of the area in which they suspected he might have hidden a weapon, particularly given that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Long*, 463 U.S. at 1047.

However, the Government has failed to show the officers' search was appropriately limited in scope to ascertain whether weapons were present. The Fourth Amendment does not permit a "general or exploratory search," but rather requires a search "limited to the danger at hand." *Green*, 465 F.2d at 625. While *Long* authorizes limited searches for weapons to protect officers, once officers' suspicion there is a weapon present has been dispelled, any further search or seizure is unconstitutional. For example, in *United States v. Austin*, 269 F. Supp. 2d 629 (E.D. Pa. 2003), officers suspected the driver of a vehicle was armed when they observed him reach for an object, but that suspicion was dispelled when they saw the object was a cell phone. *Id.* at 631. The officers nonetheless searched his vehicle and found a gun in the center console. *Id.* The court granted the defendant's motion to suppress the gun, concluding the search of the vehicle was unconstitutional because the officers' suspicion the defendant was armed was dispelled prior to the search which uncovered the gun. *See id.* ("The officers knew that [the defendant] had reached for a cell phone, not a weapon, before they searched the vehicle, and there was no reason to believe that they were dealing with an armed or dangerous individual. The danger had passed when [the police officer] observed the cell phone prior to the search.").

In this case, Officer Alice's testimony makes clear he continued his search after he had already confirmed there were no weapons beneath Ferrell's seat. Officer Alice testified he shone his flashlight underneath Ferrell's seat and observed a large, clear plastic sandwich bag. On cross-examination, Officer Alice's testimony made clear that, at this point, he no longer suspected there

were weapons underneath Ferrell's seat.[7] There was no reason other than Ferrell's movements to believe he was armed or dangerous. By both officers' accounts, he was calm and cooperative throughout the stop. Furthermore, "[m]ere presence in a high crime area, . . . without more, does not constitute reasonable suspicion of criminal activity." *United States v. Mendez*, No. 06-642, 2007 WL 1576461, at *3 (E.D. Pa. May 30, 2007). As was the case in *Austin*, the officers' sole basis to suspect Ferrell was armed was eliminated once Officer Alice determined there was no weapon beneath Ferrell's seat, and Officer Alice's continued search was therefore unconstitutional.

The Government's argument the evidence should not be suppressed under the plain view doctrine is unavailing. This doctrine allows the introduction of evidence discovered during a legitimate search of the interior of a car, provided three elements are met. "First, the officer must not have violated the Fourth Amendment in 'arriving at the place from which the evidence could be

---

[8] The following exchange took place between Defense counsel and Officer Alice:
   Q: You look under the seat, and you did not see any gun at that point in time, correct?
   A: I seen the baggie.
   ***
   Q: And you looked down there, and you did not see anything that resembled or looked to be a gun. You didn't see the butt of a gun, you didn't see the barrel of a gun, you didn't see a shiny object, anything like that, did you?
   A: No sir.
   Q: Okay. All you saw was a plastic baggie at that point in time, right?
   A: Yes.
   Q: And that wasn't a shiny object, it wasn't a pistol, it wasn't anything that you could tell from that point in time, correct?
   A: Yes.
   Q: So, what you did is, now you know there's no weapons under there, at least that you could see, right?
   A: Mm-hm. [affirmative]
   **Q: So you pull the baggie out at that point in time, even though you knew there was no weapons, you pull it out, and you look at it, right?**
   **A: Yes.**
Mot. to Suppress Hr'g , 10:23:34, Oct. 1, 2009 (emphasis added).

plainly viewed.'" *United States v. Menon*, 24 F.3d 550, 560 (3d Cir.1994) (quoting *Horton v. California*, 496 U.S. 128, 136 (1990)). "Second, the incriminating character of the item seized must be 'immediately apparent.'" *Id.* (quoting *Horton*, 496 U.S. at 136). "Third, the officer must have 'a lawful right of access to the object itself.'" *Id.* (quoting *Horton*, 496 U.S. at 137).

Officer Alice's testimony establishes the contraband he discovered was not in plain view. Officer Alice did not see the drugs under Ferrell's seat; rather, he repeatedly stated he saw a plastic bag under the seat. Only after pulling the bag from beneath the seat did he see the drugs through the clear plastic.[8] Because there was no basis for this further search after his suspicion of a weapon had been dispelled and because the contraband was not visible when it was underneath the seat, the plain view doctrine does not apply. All evidence secured as a result of the unconstitutional search must be suppressed pursuant to the exclusionary rule. *Zimmerman*, 277 F.3d at 436. This evidence includes the contraband found beneath Ferrell's seat and the contraband found on his person subsequent to his arrest.

**CONCLUSIONS OF LAW**

1.  The seizure of Ferrell's vehicle was unconstitutional because there was no probable cause to believe a traffic violation had occurred.

---

[9] On direct examination, Officer Alice described his discovery of the contraband as the following: "I went underneath the seat and I observed a large clear sandwich baggie." Mot. to Suppress Hr'g, 9:45:08, Oct. 1, 2009. Counsel for the Government then asked, "And what did you believe it to be when you first saw it?" Officer Alice responded, "When I pulled it out, I could look through it, because it was a clear sandwich bag, and I knew it to be narcotics." Mot. to Suppress Hr'g, 9:45:19, Oct. 1, 2009. Similarly, on cross-examination, Defense counsel asked, "You look under. You know there's no guns. You look under, you got your light. You see a plastic bag. You pull the bag out from underneath the seat, and after you pull it out and look at it, while you're there, you can see that it's drugs, right? Is that fair to say?" Mot. to Suppress Hr'g, 10:24:49, Oct. 1, 2009. Officer Alice agreed that was a fair characterization of events.

2. The search of Ferrell's vehicle was unconstitutional because it exceeded the scope permissible to ascertain whether there was a weapon hidden under Ferrell's seat.

3. The drugs recovered from Ferrell's vehicle and his person must be suppressed under the fruit of the poisonous tree doctrine.

An appropriate order follows.